CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

BRANDON K. MOORE (MDBN 1312180261)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7181
    brandon.moore@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 26-CR-00043-CRB |
| Plaintiff, | MEMORANDUM IN SUPPORT OF THE UNITED STATES'S MOTION FOR DETENTION |
| v. | Hearing Date: February 25, 2026 |
| ILEX DANIEL VELASQUEZ, | Hearing Time: 11:00 AM |
| Defendant. | Courtroom: B, 15th Floor |

## INTRODUCTION

This case involves crimes compounded by more crimes, undeterred by overlapping terms of court supervision. Interrupted during a suspected catalytic converter theft, Defendant Ilex Daniel Velasquez fled from police in a stolen Audi. He evaded capture after firing at police with a stolen firearm—all while serving three separate terms of probation in three separate counties. Two of those terms ended unsuccessfully. After the instant offense, Velasquez accumulated two new felony convictions, including one involving a firearm. Despite being on two new terms of probation from those convictions, Velasquez had a stolen rifle when arrested for the instant offense.

As discussed further below, detention is appropriate because Velasquez poses a danger to the community and a risk of nonappearance. No conditions of release could adequately mitigate these risks.

# BACKGROUND

**I.     The Offense**

    **A.     Stolen Car, Stolen Firearm, and Shots Fired**

On January 17, 2023, at about 4:22 a.m., San Francisco Police Department ("SFPD") officers responded to the area of California Street and 9th Avenue for a reported catalytic converter theft. Based on the call, officers were looking for three suspects in a gray Audi SUV. A few blocks away, two officers spotted a vehicle matching that description—a silver Audi SUV with three occupants, driven by Velasquez. The Audi had been reported stolen just 11 days earlier.

The officers activated their lights to initiate a traffic stop. The Audi, however, sped away, and the officers quickly lost sight of it. A short time later, two other officers saw the Audi speeding down Fulton Street with its headlights off. Velasquez led those officers on a brief car chase down multiple streets. Trying to get away, Velasquez drove down the wrong direction on one street, and he sped through multiple intersections without stopping. Velasquez and his two passengers abandoned the Audi in the middle of Stanyan Street. They darted in different directions. As officers chased Velasquez on foot, he ignored their commands to stop.

He fired four to five shots in the officers' direction and discarded a gun on Stanyan Street near Geary Boulevard:



Velasquez avoided arrest that day by breaking into the Institute on Aging on Geary Boulevard and escaping through the back of the building. Officers caught one of his passengers—J.H.—in a backyard on Stanyan Street. The other passenger got away.

Officers returned to Stanyan Street, near where Velasquez discarded the gun. In the middle of the street, just south of Geary Boulevard, they recovered the gun—a black Smith and Wesson .38 special revolver bearing serial number CYU7256 with five spent .38 special cartridges. The revolver had been reported stolen from Santa Clara County.

**B.    DNA, Fingerprints, and Camera Footage**

Officers identified Velasquez by circulating an all-points bulletin with other law enforcement agencies. In response to that bulletin, San Rafael police pointed SFPD to Velasquez, whom they knew from an earlier investigation. From there, multiple pieces of evidence linked Velasquez to the instant offense, including, among other things:

- A DNA lab analysis found "strong support" to include Velasquez as a contributor to the DNA on the revolver:

**Swabs from suspects revolver serial #CYU7256 (Item 26):**
Number of contributors: 4 [Mixture ratio, 43:26:18:12]
Minimum number of males: 2
Assumed contributor(s): None
Individual(s) compared & results:

| Individual | Mixture proportion | Proposition supported | Likelihood ratio | Verbal scale |
|---|---|---|---|---|
| J█████ H█████ | 18% | Inclusion | 62.2 | Limited support |
| Ilex Velasquez | 43% | Inclusion | 284 thousand | Strong support |

- The DNA lab analysis also found "very strong support" to include Velasquez as a contributor to the DNA on the Audi's steering wheel, gear shift, signal, and start button:

**Swabs of steering wheel, gear shift, signal, and start button (Item 32):**
Number of contributors: 3 [Mixture ratio, 85:10:5]
Minimum number of males: 1
Assumed contributor(s): None
Individual(s) compared & results:

| Individual | Mixture proportion | Proposition supported | Likelihood ratio | Verbal scale |
|---|---|---|---|---|
| J█████ H█████ | NA | Exclusion | 309 | Moderate support |
| Ilex Velasquez | 85% | Inclusion | 40.7 octillion | Very strong support |

- Along those same lines, a fingerprint lab analysis identified Velasquez as the source of prints on the Audi's rearview mirror and driver's side door frame:



- Ring camera footage from behind the Institute on Aging depicts the suspect as having an appearance consistent with Velasquez:




Suspect                                    Velasquez

### C.  Indictment and Arrest with Yet Another Firearm

On January 28, 2026, a grand jury in the Northern District of California charged Velasquez for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).

Around the same time, on January 24, 2026, SFPD officers investigating a string of more recent catalytic converter thefts tried to stop another suspect Audi. The occupants fled. Although the driver got away, officers detained the passenger after a brief foot chase. The passenger had Velasquez's passport. Using the passenger's contact information, officers eventually associated a residence in

Oakland with Velasquez. On February 18, 2026, the officers (aware of his federal arrest warrant) arrested Velasquez outside the residence. They executed a search warrant at the residence and found a stolen bolt action rifle. After waiving his *Miranda* rights, Velasquez admitted that he bought the rifle and that it belonged to him:

## II.    Defendant's Criminal History

Velasquez accumulated his criminal history within the last five years, including two firearms-related convictions in 2021 and 2024. He has three additional felony convictions and three misdemeanor convictions. The record is detailed below.

| Arrest Date | Sentence Date | Court | Offense | Sentence |
|---|---|---|---|---|
| 06/17/2020 | 08/31/2021 | Napa Superior (#20CR002034) | Evading a Peace Officer: Disregard Safety (felony)<br><br>Obstructing a Peace Officer (misdemeanor) | 2 years prob.[1] |
| 11/01/2020 | 11/16/2021 | Alameda Superior (#21CR010688) | Driving While Having a 0.08% or Higher Blood Alcohol (misdemeanor)<br><br>Carry Concealed Firearm (misdemeanor) | 120 days jail, 44 days CTS[2]; 3 years prob.[3] |

---

[1] Velasquez accrued three probation violations, resulting in the court revoking his probation twice and imposing sentences of 60 days jail in July 2023 and 2 years in prison (203 days CTS) in February 2025.
[2] CTS is short for "credit for time served."
[3] Probation was revoked in June 2023, then terminated in revoked status in December 2024.

U.S.'S MEM. IN SUPP. OF MOT. FOR DETENTION    5
26-CR-00043-CRB

| 05/14/2021 | 08/12/2022 | Kern Superior (#LF013423A) | DUI Combined Alcohol and Drugs (misdemeanor)<br><br>Evading a Peace Officer: Disregard Safety (felony) | 6 months jail; 2 years prob. |
|---|---|---|---|---|
| 06/20/2023 | 12/19/2024 | Alameda Superior (#23CR005962) | Possession of a Firearm by a Felon (felony) | 1 day confinement, 1 day CTS; 2 years prob.[4] |
| 07/19/2024 | 12/19/2024 | Alameda Superior (#24CR007636) | False Imprisonment by Violence (felony) | 1 day confinement, 1 day CTS; 2 years prob.[5] |

Additionally, Velasquez has incurred multiple probation violations in separate cases. This has resulted in the revocation of multiple terms of probation. *See* Napa Superior Case No. 20CR002034 and Alameda Superior Case No. 21CR010688. In one of those cases, some revocations resulted in incarceration. *See* Napa Superior Case No. 20CR002034. Finally, Velasquez was serving three different terms of probation when he committed the instant offense. *See* Napa Superior Case No. 20CR002034, Alameda Superior Case No. 21CR010688, and Kern Superior Case No. LF013423A. He continues to be on probation for firearms and false imprisonment offenses accrued after the instant offense.

**LEGAL STANDARD**

Under the Bail Reform Act, the Court must detain a defendant pretrial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary for the government to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a

---

[4] Velasquez's probation for #23CR005962 is scheduled to terminate on December 19, 2026.
[5] Velasquez's probation for #24CR007636 is scheduled to terminate on December 19, 2026.

U.S.'S MEM. IN SUPP. OF MOT. FOR DETENTION   6
26-CR-00043-CRB

preponderance of the evidence. *Id*.

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The Rules of Evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f)(2)(B). It is well-settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in an offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 743 (1987).

## ARGUMENT

Although still young, Velasquez has already amassed two firearms convictions. He is now facing his third (and potentially fourth) convictions for firearms crimes. At the same time, he has zero history of compliance. He committed the instant offense while on probation in three different counties, two of which ended in revocations. Last week, while on two new terms of probation, officers found him in possession of a stolen rifle. It is not just the failure to curb his criminal conduct or comply with conditions. There have also now been at least two instances where Velasquez evaded capture, requiring investigatory resources to find him. In one of those instances, he fired at police to aid his escape.

Given this history, no conditions will reasonably assure the safety of the community or the defendant's appearance at future court dates.

**I.    Danger to the Community.**

This offense alone shows that Velasquez poses a significant danger to the community. Velasquez took a non-violent crime (attempted catalytic converter theft) and quickly escalated it to a

near-deadly one by leading officers on a high-speed chase and shooting at them with a stolen firearm. The weight of this evidence is strong. The initial three probation terms did nothing to deter that conduct, and the most recent two probation terms did nothing to stop him from having a stolen rifle when arrested for the instant offense. His criminal history compounds the problem. If found guilty here, the instant offense would be his third (and potentially fourth) firearm convictions. Thus far, Velasquez has been unwilling or unable to dissociate himself with firearms (particularly stolen firearms) and other criminal conduct despite his increasing criminal history.

Notably, Pretrial Services agrees that Velasquez should be detained as a risk of danger to the community.

## II. Risk of Nonappearance.

Velasquez serves a risk of nonappearance for two reasons.[6] *First*, as detailed above, he has shown little regard for court supervision. Because he committed the sum total of the conduct here while on five different terms of probation, there currently is no reason to believe that his compliance will improve.

*Second*, in the event he commits more crimes, there have now been multiple instances where Velasquez has fled from police and evaded capture, requiring efforts to locate or even identify him as a suspect. Indeed, independent of the instant offense and his arrest last week, two of his convictions are for evading police under circumstances that constitute a disregard for safety.

## CONCLUSION

For those reasons, there is no set of conditions that will reasonably ensure the safety of the community or Velasquez's appearance. Detention is appropriate under these circumstances.

DATED: February 24, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

 /s/ Brandon K. Moore
BRANDON K. MOORE
Assistant United States Attorney

---

[6] Velasquez's circumstances merit detention regardless of his immigration status. But the government notes, simply for fulsomeness of the record, that Velasquez does not appear to be present in the United States lawfully and has an active immigration detainer currently pending.

U.S.'S MEM. IN SUPP. OF MOT. FOR DETENTION   8
26-CR-00043-CRB